**KEMCO SALES, INC. and Kenneth R. Makowka, Plaintiffs–Appellants,**

v.

**CONTROL PAPERS COMPANY, INC., Amko Plastics, Inc., and Regal Envelope (also known as Poly–Pac Industries), Defendants–Appellees,**

No. 99–1349.

United States Court of Appeals, Federal Circuit.

April 7, 2000

Rehearing and Rehearing En Banc Denied May 15, 2000

Timothy Robert Dewitt, Arnold & Porter, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Christopher F. Winters.

Peter L. Berger, Levisohn, Lerner, Berger & Langsam, of New York, New York, argued for defendants-appellees. With him on the brief was Barry E. Negrin. Of counsel on the brief was Edward Dreyfus, Stranger & Dreyfus, of Mountainside, New Jersey.

Before PLAGER, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Kemco Sales, Inc. and Kenneth R. Makowka (collectively "Kemco") appeal from the decision of the United States District Court for the District of New Jersey granting Control Papers Company, Inc.'s motion for partial summary judgment that it does not infringe claim 27 of U.S. Patent 5,405,197, either literally or under the doctrine of equivalents, and denying Kemco's corresponding cross-motion. *See Kemco Sales, Inc. v. Control Papers Co.*, 93 F.Supp.2d 563 (D.N.J.1998) ("*Kemco I*"). Kemco also appeals from the district

court's decision denying Kemco's motion for reconsideration and entry of final judgment. *See Kemco Sales, Inc. v. Control Papers Co.*, No. 97–Civ.–1291(WGB) (D.N.J. Nov. 9, 1998) ("*Kemco II*"). Because the district court did not err in its rulings, we affirm.

## BACKGROUND

### A. *The Claimed Invention and the Accused Device*

The '197 patent is directed to plastic security envelopes that are "tamper-evident," i.e., they indicate when a thief has breached the integrity of the envelope and removed the valuables contained within it. *See* '197 patent, col. 1., ll. 16–35. The written description explains that the security afforded by prior art tamper-evident envelopes using adhesive-type materials is easily circumvented by applying low temperatures to the adhesive region, thereby causing the seal to separate from the envelope; after the valuables are removed, the envelope eventually reseals on its own, leaving no evidence of tampering. See id. at col. 1, l. 64 to col. 2, l. 12. The claimed invention solves this problem by employing two sealing means, one of which serves as the primary closing mechanism of the envelope, the other of which indicates any attempt to open the envelope. See id. at col. 2, ll. 18–39. The tamper-evident sealing means is comprised of fragile, temperature-sensitive adhesive and backing material. See generally id. at col. 7, l. 30 to col. 9, l. 10. Claim 27, the only claim at issue, recites the following:

27. A tamper-evident sealing system for an envelope made at least partially of plastic material comprising:

[an] envelope pocket having an opening therein through which contents can be placed into the pocket before the opening is closed;

*[a] plastic envelope closing means secured to the plastic envelope material to close the opening and to form a closed pocket,* the closing means having at least one transverse edge;

[a] first, adhesive, sealing means between the closing means and plastic envelope material for sealing the closing means to the plastic envelope material; and

[a] second, tamper-evident, sealing means secured to both the closing means and the envelope extending substantially along the length of and over the transverse edge which becomes visibly distorted, broken apart, or of disrupted continuity if attempts are made to reopen the second, tamper-evident, sealing means whereby tamper-evidency is provided even if the first, adhesive, sealing means can be reopened and reclosed without visual detection thereof.

*Id.* at col. 13, l. 67 to col. 14, l. 19 (emphasis and paragraphing added).

Figures 1–4, which have been modified slightly for clarity, illustrate one of the preferred embodiments of the claimed envelope as follows:

FIG. 1. FIG. 2. FIG. 3. FIG. 4.

As shown in Figure 1's dorsal view and Figure 2's side view, security envelope **10** is substantially flat, constructed from a single sheet of material folded upon itself, such that the front panel **20** extends beyond rear panel **18** to provide closing flap **36**. This mode of construction provides the bottom of the envelope **12**, as well as side seams **14** and **16** that are heat-welded or glued shut, thereby creating the envelope's pocket. *See id.* at col. 4, ll. 25–29. The pocket is accessed through the opening **22** at edge **19**. First sealing means **30**, which is comprised of adhesive tape **30a** and a protective, peelable liner **30b** that covers **30a**, is located on closing flap **36** and seals the envelope after the liner is removed. Second sealing means **40**, which

is likewise comprised of a layer of adhesive tape **40a** and a protective, peelable liner **40b**, is attached to flap **36** and extends beyond it, serving to provide the tamper-evident seal after the protective liner is removed. Figures 3 and 4 illustrate the process of closing this embodiment. Figure 3 shows a side view of the envelope just prior to closing, in which protective liners **30b** and **40b** have been removed. Figure 4 depicts the envelope after adhesive tape **30a** has been placed against back panel **18**, thereby sealing the envelope, and after adhesive tape **40a** has been placed against back panel **18**, thereby conferring the tamper-evident seal.

Figures 5 and 6 depict another preferred embodiment of the claimed invention as follows:[1]

1. All of the numbers in Figures 5 and 6 correspond to those in Figures 1–4, except that they are preceded by the number 1 to indicate that a different embodiment is depicted.

FIG. 5.

FIG. 6.

In this embodiment, the envelope 110 and its flap 136 are separate components. Because the flap is separate from the envelope, it has one set of sealing means (130 and 140) on each side of the flap to attach it to the envelope. One set seals the envelope in substantially the same manner as the other preferred embodiment: the protective liners 130b and 140b are removed, and adhesive tapes 130a and 140a are placed against back 118 of the envelope. The same procedure is followed for the other set, except that adhesive tapes 130a and 140a are placed against front 120 of the envelope. The sealed envelope is depicted in Figure 6.

The accused device, Control Papers' TripLok envelope, is structurally similar to the claimed invention and also utilizes two adhesive layers. As in the claimed invention, one layer is principally responsible for sealing the envelope and the other indicates any evidence of tampering. Unlike the claimed invention, the TripLok is closed by way of a dual-lip structure that seals together via an internal adhesive. Figures 1–4 depict accused security envelope 10 as follows:

FIG./ FIG.2 FIG.3 FIG.4

Figures 1 and 2 illustrate the basic structure of the TripLok. The TripLok has front and back panels (12 and 14, respectively) and chamber 20 for holding valuables. The upper portions of the front and back panels are referred to as "lips" (22 and 24, respectively), and header 30, to which header adhesive 36 is attached, is made of tamper evident material and is itself attached to the outside of lip 24. Internal adhesive 26 is attached to the inside of lip 24. Both the internal and header adhesives are covered by a single peelable release liner 37. Figure 2 shows the two exposed adhesive layers once the

release liner is removed, and Figure 3 shows the step of sealing the envelope closed by placing the lips together, thereby binding them via the internal adhesive 26. Figure 4 illustrates the final closure step, whereby header 30 is folded over the sealed envelope, allowing header adhesive 36 to adhere to the outside of lip 22.

B. *The District Court Decision*

Kemco sued Control Papers, alleging, inter alia, infringement of the '197 patent. Control Papers moved for partial summary judgment of noninfringement, and Kemco cross-moved for summary judgment that claim 27 was literally infringed by the TripLok envelope.[2] *See Kemco I*, slip op.

2. Kemco did not move for summary judgment of infringement of claim 27 under the doctrine of equivalents. *See* Pl.'s Cross–Mot. for Summ. J. of Literal Infringement of Claim 27 at 1–2. The court nevertheless addressed in-

fringement by equivalents, apparently in view of Control Papers' general allegation that there was no genuine issue of material fact that the TripLok did not infringe the '197

at 2. The district court first construed claim 27 and held that the "plastic envelope closing means" limitation was written in means-plus-function language as set forth in 35 U.S.C. § 112, ¶ 6.[3] *See id.* at 16–17. Turning to the written description and accompanying drawings, the court further concluded that the structure associated with the closing means is a flap that folds over the opening and is secured to one or more of the outside panels of the envelope. *See* id. at 18–20, 22–23.

Based on its claim construction, the district court held that no reasonable jury could find that the TripLok literally infringes claim 27, as the dual-lip structure that closes the TripLok is not identical to, or an equivalent of, a fold-over flap. *See generally* id. at 23–28. Citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 46 USPQ2d 1752 (Fed.Cir.1998), the court further held that no reasonable jury could find that the TripLok infringes under the doctrine of equivalents, as the inventor of the '197 patent failed to disclose the dual-lip structure utilized in the TripLok, despite the fact that such a structure existed prior to the issuance of the '197 patent. *See Kemco I*, at 29–30; *see also Chiuminatta*, 145 F.3d at 1310–11, 46 USPQ2d at 1758. Accordingly, the court granted Control Papers' motion for partial summary judgment of noninfringement and denied Kemco's corresponding cross-motion. *See Kemco I*, at 30–31. The court also denied Kemco's motion for reconsideration, or alternatively, for entry of judgment under Fed.R.Civ.P. 54(b).[4] *See Kemco II*, slip op. at 2. The parties set-tled the remaining nonpatent claims, and the court entered final judgment. Kemco appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of a motion for summary judgment without deference, applying the summary judgment standard anew. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378, 53 USPQ2d 1225, 1227 (Fed.Cir.1999).

Determining whether an accused process or device infringes a patent claim is a two-step process. "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." *Streamfeeder, LLC v. Sure–Feed Sys., Inc.*, 175 F.3d 974, 981, 50 USPQ2d 1515, 1519 (Fed.Cir.1999). Claim construction is

---

patent. *See* Def.'s Notice of Mot. for Summ. J. of Noninfringement at 1–2.

**3.** Section 112, paragraph 6 provides that:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (1994).

**4.** Rule 54(b) provides in relevant part that:
 **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.**
 [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 Fed.R.Civ.P. 54(b).

a question of law, *see Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc), while infringement, either literal or under the doctrine of equivalents, is a question of fact, *see Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).

■ Whether the language of a claim is to be interpreted according to 35 U.S.C. § 112, ¶ 6, i.e., whether a claim limitation is in means-plus-function format, is a matter of claim construction and is thus a question of law, reviewed de novo. *See Personalized Media Communications, LLC v. ITC*, 161 F.3d 696, 702, 48 USPQ2d 1880, 1886 (Fed.Cir.1998). Once a court establishes that a means-plus-function limitation is at issue, it must construe that limitation, thereby determining what the claimed function is and what structures disclosed in the written description correspond to the "means" for performing that function. These issues are likewise questions of law, reviewed de novo. *See Chiuminatta*, 145 F.3d at 1308, 46 USPQ2d at 1755–56.

### B. *Claim Construction*

Kemco argues that the district court erred in holding that the structure corresponding to the closing means limitation is a flap that folds over the opening of the envelope. Kemco asserts that the corresponding structure is simply a plastic flap extending beyond the side seals of the envelope pocket to which it is attached, and that the court erroneously read the fold-over limitation into the claim from the written description and the drawings. Kemco likewise contends that the district court altered the function (closing) by importing a method (folding over) from the written description. Kemco also argues that the court incorrectly defined the structural language "secured to the plastic envelope material" to mean "secured to *the outside of* the plastic envelope material," when that language should simply be defined as the flap being secured to, or connected to, the envelope material. Lastly, Kemco asserts that the court erred by not construing claim 27 in light of claims 1 and 19, and by construing claim 27 in such a way as to violate the claim differentiation doctrine with respect to claim 30.

Control Papers responds that the district court properly construed claim 27. Control Papers argues that the court correctly looked to the written description to determine the structure corresponding to the closing means, viz., a plastic flap that folds over the opening of the envelope, and that the court never altered the function of the closing means. Control Papers further contends that the written description teaches that "secured to the plastic envelope material" means secured to the *outside* pocket material. Moreover, Control Papers argues that the district court properly considered claims 1 and 19 in its claim construction and correctly rejected Kemco's claim differentiation argument.

■ Section 112, paragraph 6 provides that a patentee may define the structure for performing a particular function generically through the use of a means expression, provided that it discloses specific structure(s) corresponding to that means in the patent specification. *See* 35 U.S.C. § 112, ¶ 6 (1994); *Atmel*, 198 F.3d at 1380–82, 53 USPQ2d at 1229–31 (holding that the structure supporting a means-plus-function limitation must be disclosed in the specification); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir.1993) ("The applicant must describe in the patent specification some structure which performs the specified function."). As such, we have referred to section 112, paragraph 6 as embodying a statutory quid pro quo. *See, e.g., Atmel*, 198 F.3d at 1381, 53 USPQ2d at 1230; see also *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424, 43 USPQ2d 1896, 1900 (Fed.Cir. 1997) ("Th[e] duty to link or associate structure to function is the quid pro quo for the convenience of employing § 112, ¶ 6."). If a patentee fails to satisfy the bargain because of a failure to disclose adequate structure, the claim will be ren-

dered invalid as indefinite under section 112, paragraph 2. *See In re Donaldson Co.*, 16 F.3d 1189, 1195, 29 USPQ2d 1845, 1850 (Fed.Cir.1994) (en banc).

Before a court attempts to analyze what appears to be a means-plus-function claim limitation, it must first assure itself that such a claim limitation is at issue. Use of the term "means" in a claim limitation creates a presumption that section 112, paragraph 6 has been invoked, but that presumption may be rebutted if the properly construed claim limitation itself recites sufficiently definite structure to perform the claimed function. *See Personalized Media*, 161 F.3d at 704 & nn. 9, 10, 48 USPQ2d at 1886–87 & nn. 9, 10. Conversely, absence of the word "means" creates a presumption that section 112, paragraph 6 has not been invoked, and that presumption may likewise be rebutted if the claim limitation is determined not to recite sufficiently definite structure to perform the claimed function. *See id.* at 704 & n. 10, 48 USPQ2d 1886–88 & n. 10. After a court establishes that a means-plus-function limitation is at issue, it must then construe the function recited in that claim and determine what structures have been disclosed in the specification that correspond to the means for performing that function. *See* Chiuminatta, 145 F.3d at 1308, 46 USPQ2d at 1755–56.

As an initial matter, we agree with the district court that the "plastic envelope closing means" limitation is in means-plus-function format. The term "means" in this limitation creates a presumption that a section 112, paragraph 6 interpretation is called for, and we observe that the claim fails to recite sufficient structure for closing the envelope that would otherwise rebut that presumption. *See Personalized Media*, 161 F.3d at 704 & nn. 9, 10, 48 USPQ2d at 1886–87 & nn. 9, 10. Moreover, we see no reason to interpret the function of "closing" in any way other than one of its common meanings, i.e., sealing, such that entry or exit is prevented. *See Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1356, 53 USPQ2d 1734,

1737 (Fed.Cir.2000) ("Claim terms receive their ordinary and customary meaning unless the patentee assigns a special meaning.") (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996)). In the present case, "closing" is the act of sealing the envelope by way of the "closing means," thereby preventing valuables placed within it from falling out or being removed. The heart of the parties' argument focuses on what structure(s) correspond(s) to the "closing means" limitation.

Kemco argues that the district court erred in concluding that the structure in the written description corresponding to the closing means is a fold-over flap, thereby misconstruing the claim term and altering the recited function. Kemco also contends that the court erred in construing "secured to the plastic envelope material" to mean "secured to *the outside of* the envelope material." We agree with Control Papers, however, that the district court correctly held that the disclosed structure corresponding to the closing means limitation is a piece of plastic that folds over the envelope's opening and is secured to the outside of one or both panels of the envelope. The '197 patent depicts the characteristics of the flap structure in Figures 1, 2, and 3–6, and also describes at length how the flap functions in the two principal embodiments depicted in those figures. Figure 4, which illustrates a unified envelope and flap embodiment, clearly shows that closing flap 36 is a piece of plastic that closes the envelope by folding over opening 22 and being secured to the outside of front panel 18 via adhesive 30a. The written description states that:

> By removing liners 30*b* and 40*b* ... and then *folding flap 36 over opening 22 and sealing adhesive tape 30 a and sealing tape 40 a onto the back panel*, a completely sealed envelope is provided which will be tamper-evident if access to the envelope is attempted by peeling

back the flap and opening the first adhesive sealing means.

'197 patent, col. 4, ll. 58–64 (emphasis added). In describing a slight variation of this embodiment in which the adhesive tape is on the outside of the rear panel instead of on the flap, the written description likewise states that:

> Adhesive assembly **40** may reside on the main potion [sic] of the flap or, alternatively, on a portion of the back panel *over which the flap overlies when the flap closes on the envelope.* In the envelope shown in FIGS. 3 and 4, the contents are placed in the envelope, the liner peeled from adhesive tapes **30a** and **40a** and discarded, or alternatively used as a receipt, and *the flap folded over the opening to close the envelope. Pressure is then applied to adhesive tapes **30 a** and **40 a** to seal the flap onto the envelope.*

*Id.* at col. 6, ll. 11–20 (emphasis added); see also *id.* at col. 7, ll. 37–47. The alternative embodiments depicted in Figures 10B and 11B contain nearly identical flap structures, which similarly fold over the envelope's opening to close it. *See id.* at col. 10, ll. 54–60, 65–68.

Figure 6, which depicts the embodiment in which the plastic flap and envelope are separate parts, shows that flap **136** closes the envelope by folding over the top and being secured to the outside of both front panel **118** and rear panel **120**. Again, the written description describes the flap in the following manner:

> In this case the flap **140** [sic, **136**] can be a separate item which would be applied over the opening **122** of the envelope **100** with means to secure the opening, such two adhesive assemblies **130** and two adhesive assemblies **140** with a fold in between so that *the assemblies can be sealed to the front **120** and back **118** portions of the pocket* as shown in FIG. 6 to make it completely sealed around its periphery to close the opening.

*Id.* at col. 6., ll. 39–47 (emphasis added). Thus, both the written description and the accompanying drawings indicate that the disclosed structure corresponding to the closing means is a plastic, fold-over flap that is secured to the outside of one or both panels of the envelope.

We are fully cognizant of the need to avoid reading limitations into a claim from the specification. To that effect we have noted that:

> [T]his court has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is *meant* by a word *in* a claim "is not to be confused with adding an extraneous limitation appearing in the specification, which is improper."

*Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1348, 49 USPQ2d 1199, 1204 (Fed. Cir.1998) (quoting *Intervet America, Inc. v. Kee–Vet Laboratories, Inc.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed. Cir.1989)). Specifically, we have noted the danger of reading limitations into the claims from the preferred embodiments: "[A]lthough the specifications [sic] may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1054, 32 USPQ2d 1017, 1021 (Fed.Cir.1994); *see SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121–22 & n. 14, 227 USPQ 577, 585–86 & n. 14 (Fed.Cir.1985) (en banc).

We do not agree with Kemco, however, that the district court erred in this regard. Rather, the court looked to the written description for the structure(s) corresponding to the closing means limitation as directed by section 112, paragraph 6 and correctly determined that the relevant structure was a fold-over flap. In contrast, Kemco's expansive interpretation of what structures correspond to the closing means limitation is simply not supported

by any disclosure in the written description. Moreover, the court's construction in no way alters the closing function recited in the claim. As noted above, that function is to seal the envelope to prevent the loss of the valuables placed within it.

Kemco also argues that the district court erred in requiring the disclosed flap to fold over the opening because, unlike claims 1 and 19, claim 27 does not explicitly require that the flap be "placed over" the opening. We agree with Control Papers that this argument is without merit. As indicated by Kemco, claim 1 claims a "plastic closing means which when *placed over* and secured to the plastic envelope material forms a closed pocket," '197 patent, col. 11, ll. 36–38 (emphasis added), and claim 19 similarly claims a "plastic closing means which when *placed over* and secured onto the envelope forms a closed pocket," *id.* at col. 13, ll. 19–20 (emphasis added). Kemco also correctly indicates that claim 27 lacks the emphasized language contained in those claims. However, based on the district court's correct conclusion that the structure corresponding to the "closing means" limitation is a fold-over flap, it is clear that for the flap to perform its closing function, it must be "placed over" the opening in order for it to then be "secured to the plastic envelope material."

 Kemco lastly contends that by adding the "fold-over" limitation, the court made claims 27 and 30 equivalent, thereby violating the doctrine of claim differentiation.[5] We agree with Control Papers that claim 30 is different from claim 27 because claim 30 requires that one of the two sealing means be activated by the application of pressure. *See id.* at col. 14, ll. 26–29. Kemco contends, however, that the "applying pressure" limitation is inherent in claim 27, because one must apply pressure to the sealing means in order for them to adhere to the envelope. We reject Kem-

co's attempt to read a limitation from claim 30 into claim 27, and note that applying pressure to the sealing means is not the only way in which the claimed envelopes might be sealed.

In sum, we conclude that the district court correctly held that the structure corresponding to the "closing means" limitation is a plastic flap that folds over the envelope's opening and is secured to the outside of one or both panels of the envelope. We have also considered Kemco's other arguments on this issue, but find them unpersuasive.

## C. *Infringement*

Kemco first argues that the district court erred in holding that no reasonable jury could find that the TripLok literally infringes claim 27, asserting that the dual-lip structure of the TripLok is a section 112, paragraph 6 equivalent of the disclosed flap structure. Kemco further contends that the court erred in holding that no reasonable jury could find that the TripLok infringes under the doctrine of equivalents, based on an erroneous interpretation of *Chiuminatta*. Kemco asserts that this misinterpretation led the court to unduly limit the structures associated with the "closing means" to only those structures disclosed in the specification. Kemco also contends that the accused and disclosed structures are equivalents under the doctrine of equivalents based on their known interchangeability.

Control Papers responds that the district court correctly held that no reasonable jury could find that the TripLok infringes claim 27 either literally or under the doctrine of equivalents. As for literal infringement, Control Papers asserts that the accused and disclosed structures are not section 112, paragraph 6 equivalents, because the dual-lip structure of the TripLok closes the envelope in a substantially

---

5. Claim 30 claims as follows:
 The sealing system as in claim **27** wherein the the [sic] first or second sealing means is one which is activated by placing the clos-

ing means onto the envelope over the opening and applying pressure to the sealing means.
'197 patent, col. 14, ll. 26–29.

different way from a fold-over flap and also achieves a substantially different result. Turning to the court's doctrine of equivalents analysis, Control Papers argues that Kemco misconstrues *Chiuminatta* and the district court's application of it. Control Papers also argues that a fold-over flap is not interchangeable with a plastic flap that meets an opposing flap.

In order for an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 "equivalent," i.e., (1) perform the identical function and (2) be otherwise insubstantially different with respect to structure. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267, 51 USPQ2d 1225, 1229 (Fed.Cir.1999); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (en banc). Under a modified version of the function-way-result methodology described in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), two structures may be "equivalent" for purposes of section 112, paragraph 6 if they perform the identical function, in substantially the same way, with substantially the same result. *See Odetics*, 185 F.3d at 1267, 51 USPQ2d at 1229–30 (setting forth a modified function-way-result analysis, acknowledging that "this tripartite test developed for the doctrine of equivalents is not wholly transferable to the § 112, ¶ 6 statutory equivalence context" due to the functional identity requirement).

If an accused structure is not a section 112, paragraph 6 equivalent of the disclosed structure because it does not perform the identical function of that disclosed structure and hence does not literally infringe, it may nevertheless still be an "equivalent" under the doctrine of equivalents. Thus, if one applies the traditional function-way-result test, the accused structure must perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure.[6] *See Dawn Equipment Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1016, 46 USPQ2d 1109, 1113 (Fed.Cir.1998). A key feature that distinguishes "equivalents" under section 112, paragraph 6 and "equivalents" under the doctrine of equivalents is that section 112, paragraph 6 equivalents must perform the identical function of the disclosed structure, *see Odetics*, 185 F.3d at 1267, 51 USPQ2d at 1229; *Pennwalt*, 833 F.2d at 934, 4 USPQ2d at 1739, while equivalents under the doctrine of equivalents need only perform a substantially similar function, *see Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320–21, 50 USPQ2d 1161, 1168 (Fed.Cir.1999).

Because the "way" and "result" prongs are the same under both the section 112, paragraph 6 and doctrine of equivalents tests, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s). That was the case in *Chiuminatta*, in which the "way" was determined to be substantially different under a section 112, paragraph 6 analysis. *See Chiuminatta*, 145 F.3d at 1309, 46 USPQ2d at 1757. Accordingly, we concluded that the accused structure did not infringe under the doctrine of equivalents for precisely the same reason. *See id.* at 1311, 145 F.3d 1303, 46 USPQ2d at 1758.

In the present case, we agree with the district court that no reasonable jury could have found that the TripLok infringes, either literally or under the doctrine of equivalents. Turning first to liter-

---

**6.** We note that the basic inquiry under the doctrine of equivalents is whether the differences between the accused and disclosed structure are "insubstantial," *see Chiuminatta*, 145 F.3d at 1310, 46 USPQ2d at 1758, and that the function-way-result analysis may not always be decisive in making that determination, *see Graver Tank*, 339 U.S. at 609, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ at 330 ("Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum.").

al infringement, it is clear that the fold-over flap structure disclosed in the '197 patent specification is not identical to the dual-lip structure in the accused device, so we must then ask whether the dual-lip structure is an "equivalent" structure under section 112, paragraph 6. In determining this under a modified function-way-result test, we note that both the accused and disclosed structures perform the identical function, which is to close the envelope. However, unlike the disclosed flap, which closes by folding over the envelope, the dual-lip structure closes the accused envelope in a different way by meeting together and binding via the internal adhesive. The accused structure's different way of closing also yields a substantially different result. The first and second sealing means in the disclosed structure are ultimately attached to the outside of the envelope. In contrast, the first sealing means in the TripLok envelope is internally attached to the two lips of the dual-lip structure, thereby sealing the envelope.

 Based on this analysis, it is also clear that Control Papers does not infringe under the doctrine of equivalents. When a court determines that the "way" and/or "result" is/are substantially different under a section 112, paragraph 6 equivalents analysis, a patentee cannot prevail under the doctrine of equivalents for the same reason(s). In this case, the dual-lip structure is not a section 112, paragraph 6 equivalent of a fold-over flap because the "way" and "result" are substantially different; accordingly, the dual-lip structure also cannot be an equivalent under the doctrine of equivalents.

Kemco also argues that the district court misinterpreted *Chiuminatta* in determining that the dual-lip structure was not an equivalent of the fold-over flap under the doctrine of equivalents. Although we acknowledge that the court's analysis under *Chiuminatta* was not as precise as might be desired, we do not believe that the court erred in its conclusion. In *Chiuminatta* we held that the accused structure in that case was not an equivalent of the disclosed structure under the doctrine of equivalents, for the same reason that the accused structure here was not an equivalent under section 112, paragraph 6: the "way" in which the accused structure performed the claimed function was substantially different from the way that the disclosed structure performed that function. *See Chiuminatta*, 145 F.3d at 1309, 1311, 46 USPQ2d at 1757, 1758. As we discussed above, that is the same situation in this case, except that here the "result" is also substantially different.

In sum, we conclude that the district court did not err in holding that no reasonable jury could find that the TripLok's dual-lip structure was an equivalent of a fold-over flap, interpreted either under section 112, paragraph 6 or the doctrine of equivalents. In light of the reasoning above, we need not reach Kemco's arguments regarding interchangeability. We have considered Kemco's other arguments and find them unpersuasive.

## CONCLUSION

The district court correctly held that the structure corresponding to the "closing means" limitation in claim 27 is a plastic flap that folds over the envelope's opening and is secured to the outside of one or both panels of the envelope. Based on that construction, the district court did not err in concluding that no reasonable jury could find that the TripLok infringes claim 27, either literally or under the doctrine of equivalents. Accordingly, the district court also did not err in denying Kemco's motion for reconsideration and entry of final judgment, which essentially consisted of a reargument of the same issues resolved by the district court in its disposition of the summary judgment cross-motions. We therefore

*AFFIRM.*