Submitted on briefs September 13, decided December 6, 1910, rehearing denied January 17, 1911.

## SNYDER v. HARRINGTON.

[112 Pac. 6.]

PARTNERSHIP—DEATH OF PARTNER—FRAUD OF SURVIVOR—EVIDENCE.

1. Circumstantial evidence in a suit by one, as executrix of a deceased partner and as administratrix of the partnership estate, against H., the surviving partner, and E., to recover the partnership estate, *held,* sufficient to overcome the testimony of defendants, and to prove fraudulent conspiracy between defendants in the transfer to E. of property, which the partnership estate held under a conditional sale in the form of a lease to the partnership.

PARTNERSHIP — ACTS OF SURVIVING PARTNER — BENEFITS INURING TO ESTATE.

2. Every advantage or waiver which the surviving partner secures by his exercise of control *de son tort* over the partnership estate inures to the benefit of the estate, and not to him personally.

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by Frances M. Snyder, as executrix of the estate of Victor E. Snyder, deceased, and as administratrix of the partnership estate of Snyder & Co., against John Harrington, surviving partner of the partnership estate of Snyder & Co., and J. Ehwegen. The facts, as brought out at the trial, are as follows:

On May 15, 1905, defendant Harrington, and Victor E. Snyder, plaintiff's testator, became partners in the saloon business, which was carried on in a building known as the "Office Cafe," in Medford, Oregon, under the firm name of Snyder & Harrington. Snyder was an active partner in the business until February 5, 1907, when he was attacked with an illness of which he died on the 17th of the same month. Plaintiff was appointed executrix of his estate and became administratrix of the partnership estate of Snyder & Harrington. After her appointment she demanded possession of the partnership estate, for the purpose of administration, and, upon Harrington's refusal to surrender the same, obtained an order from the probate court directing him to surrender possession. Upon being served with this order, Harrington brought suit against the executrix to enjoin her from interfering with his possession, alleging that the estate owned only an interest in the profits of the business, and praying for an accounting for profits. Issue was joined and a trial had on July 1, 1907, and was decided on November 30, 1907. In the meantime, Harrington held possession of the property and carried on the business. The court found that Snyder, at his death, was an equal partner, and that since that time

his estate has been a half owner in the saloon, fixtures, and business. The court also vacated the injunction order, leaving the matter in the same condition that it was when the order of the probate court was made, nearly two years before. Harrington was again served with the order of the county court, requiring him to turn over the property to the executor. He declined to do so and was committed to jail for contempt, where he remained for about 30 days, until discharged upon *habeas corpus* proceedings. On February 1, 1909, Harrington notified the executrix that he would surrender possession of the partnership property; but, when an attempt was made on that date to take possession, one E. W. Carver, the barkeeper of Harrington, notified the agent of the executrix that he held possession of the fixtures as agent of Ehwegen, while Harrington falsely claimed that the lease under which Snyder & Harrington had held the building had expired, and that he held possession under a new lease to himself, and ordered that what he admitted to be partnership property should be forthwith removed. Ehwegen's claim of title to the bar and fixtures is based upon the following state of facts: The bar and fixtures were originally procured from the Brunswick-Balke-Collender Company, upon a conditional sale or lease contract, whereby the Brunswick-Balke-Collender Company, in consideration of the payment to them of $500 in cash, and the further agreement by the purchasers to pay them the sum of $1,500 in monthly cash payments of $100 each, and a final payment of $40, the whole to be paid within 16 months from April 10, 1905, leased the property to the purchasers, retaining title in itself, with the right to demand and take possession of the same upon default of any of the payments, or at any time when it should deem necessary to do so, in order to protect itself against loss. The company further agreed that, upon payment of the sums above mentioned, according to the agreement, it would sell the property to

the lessees for the sum of $61. Thereafter, on January 2, 1907, the contract was assigned to the Northern Brewing Company, with whom Snyder & Company were doing business, by the Brunswick-Balke-Collender Company. At the request of Snyder & Company the brewing company advanced the sum of $401, being the amount yet unpaid on the agreement, which was charged against Snyder & Company on the books of the brewing company, and there referred to in the account of "Bills Receivable," as a note of Snyder & Company. On August 15, 1907, at the request of Harrington and upon the payment by him of $401, the amount due on the agreement, and $200 of an overdue bill for beer, the brewing company made an assignment of the agreement in the following words:

"Portland, Oregon, Aug. 15, 1907.
"Received from John Harrington, four hundred and one dollars in consideration of which within lease is hereby transferred. The Northern Brewing Co."

This assignment, not being satisfactory to Ehwegen, who claims to have advanced the money, was returned to the brewery company, who interlined it so that it now reads as follows:

"Received from John Harrington, for J. Ehwegen, four hundred and one dollars, in consideration whereof within lease is hereby transferred to said Ehwegen."

Ehwegen and Harrington testified, in substance, that the latter, finding himself unable to use the beer of the brewery company profitably in his business, and the payments on the lease being overdue, as well as a balance of $200, owing to the brewery company, for beer, applied to Ehwegen to take up this lease, which the brewing company would not assign until the arrearage of $200 was also paid; that thereupon Ehwegen advanced the $600 necessary to secure the transfer, charging himself with the amount and agreeing that Harrington should have the

use of the bar without rent so long as he continued to purchase the beer of Ehwegen.   The circuit court found for the defendant and dismissed the suit. Plaintiff appeals. Other facts will be stated in the opinion.     REVERSED.

Submitted in briefs without argument under the proviso of Rule 16 of the Supreme Court: 50 Or. 580 (91 Pac. viii.)

For appellant there was a brief over the names of *Mr. W. E. Phipps, Mr. William I. Vawter,* and *Mr. Porter J. Neff.*

For respondents there was a brief over the names of *Mr. Robert G. Smith, Mr. E. E. Kelley, Mr. Hiero K. Hanna, Jr.,* and *Messrs. Colvig & Reames.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The testimony in this case indicates a determined and systematic attempt on the part of defendant Harrington to defraud and rob his deceased partner's estate.   The venerable judge of the court below used this language in his findings of fact:

"There are some circumstances attending the transfer of the above-described property to the defendant Ehwegen that tend to support the averments of conspiracy and fraud set out in plaintiff's complaint, but not sufficient to overcome the positive and sworn evidence of both the defendants, and no conspiracy of fraud is found."

We are of the opinion that there is sufficient circumstantial evidence to overcome the sworn testimony of the defendants, and, therefore that fraud and conspiracy is proved.

2. As to Harrington, his denial of the partnership, refusal to account, under the pretext that his books had been stolen, and his whole conduct, satisfy us that he is utterly unworthy of credit.   It seems absolutely improbable that he would enter into a contract to convey, entirely,

Sig. 18

property worth $3,200 for the sum of $600. Upon its face the transaction is unreasonable. The assertion that he was without money to meet the payments and went to Ehwegen on that account does not comport with a previous affidavit made by him, that the profits of the business were probably $10 per day; and his story about the loss or theft of his books, and his consequent inability to give an accurate account of the condition of his business, does not impress the court with its truth. Whether Ehwegen advanced the $600 or not, we are convinced that he took the assignment in trust for Harrington. The $600, which he claims to have advanced, was not paid to the Northern Brewing Company, but to Harrington, and by him to the brewery company. The original assignment made no mention of Ehwegen, as assignee, which indicates that nothing of the kind was contemplated by Harrington when he paid the money, and that the subsequent interlineation of Ehwegen's name was probably an afterthought. The bar remained in Harrington's possession and control, and, indeed, there was no legal way for Ehwegen to get control of it, except to seize it under the provision of his lease, which he waived by agreeing that Harrington should use it so long as he purchased Ehwegen's beer. Harrington, being a mere intruder upon the partnership estate and premises, could make no contract giving Ehwegen title or right of possession, and every advantage or waiver secured by him, by his exercise of control over the estate *de son tort*, inured to the benefit of the estate and not to him. We cannot, in view of these and other circumstances indicating fraudulent collusion between Harrington and Ehwegen, permit the estate or the widow of the defendant to be juggled out of this entire property. We go far enough when we permit Ehwegen to have a lien upon it for the $600, which he says he advanced, and which possibly may have preserved the

property from legitimate seizure, though technically only $401 and interest were actually due.

In addition to this, as to Harrington, we think the evidence indicates that he has consumed a large amount of the firm's assets and profits of the business, but, the amount being indefinite, we fix it at a minimum of $700, and require him to pay that sum to the executrix. The lease having expired since this suit was begun, we make no order as to that, except that plaintiff be allowed free access to the premises for 20 days for the purpose of removing the bar and fixtures.

Judgment reversed.                                    REVERSED.