**APPLIED MEDICAL RESOURCES CORPORATION, Plaintiff,**

v.

**UNITED STATES SURGICAL CORPORATION, and Tyco Healthcare Group, LP, Defendants.**

**No. SACV03–01267–CJC(MLGX).**

United States District Court, C.D. California, Southern Division.

April 29, 2008.

Brian C. Horne, Joseph F. Jennings, Joseph R. Re, Valerie L. Bracken, Knobbe Martens Olson & Bear, Irvine, CA, David L. Bilsker, Howrey Simon Arnold & White, San Francisco, CA, Karen A. Gibbs, Applied Medical Resources, Legal Depart, Rancho Santa Margarita, CA, Karen V. Weil, Knobbe Martens Olson & Bear, Los Angeles, CA, for Plaintiff.

Bryan W. Leach, Fred H. Bartlit, Jr, Glen E. Summers, Sean Christopher Grimsley, Sundeep K. Addy, Bartlit Beck Herman Palenchar & Scott LLP, Denver, CO, David F. Owens, Harvey Kurzweil, Lisa B. Deutsch, Dewey Ballantine, New York, NY, Donald L. Morrow, Jay C. Gandhi, Vijay Gandhi, Paul Hastings Janofsky & Walker LLP, Costa Mesa, CA, Jill Rochelle Trumbull–Harris, Bartlit Beck Herman Palenchar and Scott, Chicago, IL, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

CORMAC J. CARNEY, District Judge.

### INTRODUCTION

This case involves a patent dispute between Plaintiff Applied Medical Resources Corporation ("Applied") and Defendant United States Surgical Corporation

("[T]he concept of excusable neglect has no place in the application of Rule 4(a)(6).").

("U.S.Surgical"). Applied contends that U.S. Surgical infringed, and continues to infringe, Claim 18 of Applied's '553 patent by making and selling its VERSAPORT™ PLUS trocars.[1] After a trial that lasted approximately five weeks, the jury found for U.S. Surgical, concluding that there was no infringement. Applied now moves to set aside the jury's verdict, or alternatively, for a new trial, on the grounds that the jury's verdict was tainted because U.S. Surgical improperly relied upon the outer portions of the septum valve disclosed in the '553 patent, in violation of the Federal Circuit's mandate in *Applied Medical Resources Corporation v. United States Surgical Corporation*, 448 F.3d 1324 (Fed.Cir. 2006). The Court finds that it committed no error in permitting U.S. Surgical to present evidence regarding the outer portions of the septum valve. The outer portions are relevant to the "way" in which the "ring-levers-teeth" embodiment

("RLT") disclosed in the '553 patent permits its valve portions to float.[2] The way in which the RLT performs the floating function is that it diverts the forces away from the valve portions and directs them toward the outer portions of the septum valve. Accordingly, Applied's motion is DENIED.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) allows a court to enter judgment as a matter of law ("JMOL") if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party" as to an issue on which that party has been fully heard during trial. FED. R.CIV.P. 50(a). A party seeking judgment as a matter of law has a "very high" standard to meet. *Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir.2002); *accord Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir.1997) ("The law places a high

1. The '553 patent discloses a "floating septum seal" for a medical device known as a trocar. A trocar provides a channel through which a surgeon can insert a medical instrument during laparoscopic surgery. As a part of this process, the abdomen is inflated with an insufflation gas to maintain the abdomen in a distended state. (Declaration of Sean Grimsley ("Grimsley Decl."), Ex. HH, '553 patent, col. 1, ll. 15–26.) Valves are typically provided in the trocars to form seals around the instruments in order to prevent leakage of the insufflation gas. (*Id.* at ll. 26–29.) One problem identified in the prior art is that off-axis insertion of an instrument, once the instrument extended through the orifice of the septum valve, tended to cause the orifice to "cat-eye," which degraded the seal around the instrument and allowed for undesirable leakage of the insufflation gas. (*Id.* at ll. 47–52.) The "floating septum seal" attempts to solve this problem by permitting an instrument inserted into a trocar to move off-axis, or "float" while meaning an airtight seal between the instrument and the trocar. (*Id.* at col. 2, ll. 6–52.)

2. Claim 18 has both "supporting" and "permit to float" functions. The same means that perform the supporting function must also

perform the floating function. (*See* Claim 18, col. 13, ll. 55 to col. 14, ll. 10) ("means disposed circumferentially outwardly of the valve portions for supporting the valve portions within the seal housing, the supporting means being moveable relative to the housing to permit the valve portions to float relative to the axis of the cannula.") At Applied's request, the Court instructed the jury that the same structure had to perform both functions. (Grimsley Decl., Ex. AA, Juror Note No. 4 and Response.) During the trial, the parties focused on the relevancy of the outer portions to the way in which the RLT performs the floating function. Given the relevance of the outer portions to the way in which the RLT performs the floating function, the Court need not determine whether the outer portions have any relevance to the way in which the RLT performs the supporting function. The Court notes, however, that the outer portions must be compatible with and must not obstruct the way in which the RLT performs the supporting function. This is because the outer portions and the valve portions of the RLT comprise a unitary structure and not two distinctly different structures.

standard on overturning a jury verdict.") The Ninth Circuit has held that parties seeking judgment as a matter of law have such a high burden to meet because courts generally should not impinge upon the province of the jury. *See Costa,* 299 F.3d at 859 ("This high hurdle [of meeting the standard for JMOL] recognizes that credibility, inferences, and factfinding are the province of the jury, not this court.")

Because of the important need to respect the ambit of juries, a court should only grant a JMOL motion when there is a "complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party."[3] *Eich v. Bd. of Regents for Central Mo. State Univ.,* 350 F.3d 752, 761 (8th Cir.2003). The jury's verdict must be upheld if, viewing the facts in the light most favorable to the nonmoving party, there is sufficient evidence for a reasonable jury to have found in the non-moving party's favor. *Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir.2001). Therefore, JMOL should not be granted unless "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded men could not arrive at a verdict against the moving party." *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000).

In ruling on a JMOL motion, the court may not make credibility determinations or weigh the evidence, and should view all inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149–50, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court "may not substitute its view of the evidence for that of the jury." *Johnson,* 251 F.3d at 1227. A district court may not grant a JMOL motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached." *Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101, 108 (2d Cir.2001). The judge's role is not to resolve conflicts in testimony, but to determine whether a reasonable jury could make the inference the jury actually made. *Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1286 & n. 9, 1287 & n. 10 (9th Cir.2001). Accordingly, the Court shall only overturn the jury's verdict if the evidence, construed in the light most favorable to U.S. Surgical, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.[4]

## ANALYSIS

The crux of Applied's argument is that U.S. Surgical's infringement defense "rel[ied] completely upon the outer portions of the septum disclosed in the '553 patent," and, in doing so, "flouted the Federal Circuit's mandate and the jury instructions." (Motion for Judgment as a Matter of Law, p. 1.) Applied asserts that because U.S. Surgical employed such a

---

**3.** A motion for a new trial pursuant to Rule 59 has a similarly high standard: "Where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence, and where the district court balances and weighs the evidence based on the proper legal standards, the court's denial of a rule 59 motion is virtually unassailable. In such cases, we reverse for clear abuse of discretion only where

there is an absolute 'absence of evidence' to support the jury's verdict." *Saman v. Robbins,* 173 F.3d 1150, 1154 (9th Cir.1999) (citations omitted).

**4.** *See Omega Envtl., Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1161 (9th Cir.1997), *cert. denied,* 525 U.S. 812, 119 S.Ct. 46, 142 L.Ed.2d 36 (1998).

defense, U.S. Surgical's evidence was entirely tainted and cannot support a verdict of no infringement. (*Id.*) The Court finds that it did not err in permitting U.S. Surgical to present evidence of the outer portions in connection with its non-infringement defense for two reasons. First, the jury was properly instructed on Claim 18. Second, the outer portions are relevant to the way in which the RLT performs the floating function, and thus relevant to the jury's infringement analysis.[5]

### A. The Jury Was Properly Instructed on Claim 18

There is no dispute that neither the language of Claim 18 nor the relevant claim constructions require the deformation of the outer portions of the septum valve of the RLT. Claim 18 reads as follows:

18. An access device adapted to form an access channel across a body wall, and configured to receive a surgical instrument in the access channel, the access device comprising:

a cannula having an access extending between a proximal end and a distal end of the device;

a seal housing disposed at the distal end of the cannula and forming with the cannula the access channel of the device;

a flexible valve disposed relative to the housing and across the access channel, the valve having elastomeric properties for forming a seal with the instrument when the instrument is disposed in the access channel;

portions of the value defining an orifice which is sized and configured to receive the instrument and to form the seal with an outer surface of the instrument; and

means disposed circumferentially outwardly of the valve portions for supporting the valve portions within the seal housing, the supporting means being movable relative to the housing to permit the valve portions to float relative to the axis of the cannula.

(Grimsley Decl., Ex. HH, col. 13, ll. 55 to 68; col. 14, ll. 1 to 10.) The final paragraph of Claim 18, also known as "element f," is written in means-plus-function form. Claim construction of a means-plus-function term requires the court to identify the disclosed structures in the patent specification for performing the claimed functions. *JVW Enters. v. Interact Accessories, Inc.,* 424 F.3d 1324, 1330 (Fed.Cir.2005). The disclosed structure at issue here is the RLT. United States District Judge T.S. Ellis previously construed the RLT as "a ring that is capable of moving side to side because it has a diameter less than that of the recess that holds it, and that is connected to levers with teeth that are in turn attached to the septum valve." (Horne Decl., Ex. A.) Judge Ellis' construction makes no specific reference to the outer portions, only to "the septum valve" in its entirety.[6]

In its Order Denying Defendant's Motion for Summary Judgment on Non–In-

---

5. "Relevant evidence" is "evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401 (emphasis added). As a result, relevancy is a fluid concept and typically presents a rather low barrier to admissibility. *Iacobucci v. Boulter,* 193 F.3d 14, 26 (1st Cir.1999).

6. Judge Ellis identified the structure performing the functions recited in element (f) in *Applied Medical Resources Corporation v. United States Surgical Corporation,* 967 F.Supp. 861 (E.D.Va.1997), an earlier lawsuit between the parties involving a different trocar made and sold by U.S. Surgical.

fringement dated January 8, 2007 (the "January 8 Order"), this Court construed the supporting and floating functions of Claim 18. The Court construed "supporting the valve portions within the seal housing" to mean "holding up the valve portions within the seal housing." (*Id.*) The Court construed "permit the valve portions to float relative to the axis of the cannula" to mean "permit the valve portions to move to and from the axis of the cannula." (*Id.*) Nothing in the Court's claim construction of the supporting function requires deformation of the outer portions of the septum valve; all that is required is "holding up the valve portions within the seal housing." Likewise, the Court's construction of the floating function does not require deformation of the outer portions, just that the RLT embodiment "permit the valve portions to move to and from the axis of the cannula." In construing Claim 18, the Court took special pains to avoid improperly importing unclaimed functions from the specification into the claim, in accordance with the Federal Circuit's ruling. The Court's claim construction and the language of the claim itself both indicate that Claim 18 does not require outer portions.

Contrary to Applied's argument, the jury was never misled regarding the controlling claim construction. Neither the Court nor U.S. Surgical ever stated to the jury that Claim 18 requires outer portions. Instead, this Court clearly instructed the jury regarding the proper construction of Claim 18, specifically defining the phrase "portions of the valve defining the orifice"

to mean "the non-deforming portions of the valve in which the orifice is defined;" the term "valve portions" to mean "portions of the valve defining the orifice;" and the phrase "disposed circumferentially outwardly of the valve portions" to mean "located outward of the valve portions." (Joint Jury Instructions, No. 14, p. 15.) The Court instructed the jury on the proper claim construction of the supporting and floating functions, as they are defined above. (*Id.; see also* Joint Jury Instructions, No. 15, p. 17.) The Court also defined the two embodiments disclosed by the '553 patent for the jury, incorporating Judge Ellis' prior construction of the RLT and the excess material embodiments. (*Id.* at p. 16.) The Court's instructions to the jury on claim construction did not indicate in any way that Claim 18 requires the deformation of the outer portions. In short, there is no dispute that Claim 18 does not require outer portions, and the jury was never told otherwise.

## B. The Outer Portions Are Relevant to the Way in Which the RLT Performs the Claimed Functions

Although Claim 18 does not *require* outer portions of the septum valve, the outer portions are *relevant to the way* in which the RLT performs the floating function. The jury's infringement determination hinged on whether the gimbal in U.S. Surgical's accused VERSAPORT™ PLUS permits its valve portions to float in substantially the same way as the RLT disclosed in the '553 patent (the "insubstantial difference" test).[7] Therefore, evidence

---

7. More precisely, the "insubstantial difference" test is a component of the Section 112, paragraph 6 equivalency analysis. "Literal infringement of a claim with a means-plus-function clause requires that the accused device perform a function identical to that identified in the means clause." *Ishida Co. v. Taylor*, 221 F.3d 1310, 1317 (Fed.Cir. 2000). "If it performs the identical function,

an accused device literally infringes a claim element under § 112 P. 6 only if it is insubstantially different from the corresponding structure in the patent specification." *Id.* "The 'insubstantial difference' analysis requires a determination of whether the way the accused structure performs the claimed function, and the result of that performance, are substantially different from the way the

explaining the way in which the accused device or the RLT perform the floating function is probative evidence on the issue of infringement. The Court's finding that the outer portions are relevant to the way analysis is based on three key sources of evidence presented to the jury: (1) the plain and clear wording of the '553 patent itself; (2) the testimony of Professor Michael McCarthy, expert for U.S. Surgical; and (3) the testimony of Mr. Neil Sheehan, expert for Applied.

First, the language of the '553 patent indicates that the outer portions of the septum valve are relevant to the way in which the RLT performs the floating function. More specifically, the RLT is described in the patent as follows:

> In another embodiment, lever actuators are pivotally mounted on a ring which floats in an enlarged annular recess. When an instrument is inserted off-axis, the lateral force on the levers moves the inner portions of the valve laterally but undeformed as the *outer portions* are stretched.

(Grimsley Decl., Ex. HH, Col. 2, Il. 19 to 24) (emphasis added). Thus, the outer portions are identified in connection with the RLT's ability to move the inner portions of the valve laterally but undeformed. In describing the way the seal is permitted to float in the RLT, the patent provides:

> Since the levers 54 float with the ring 184, they tend to move off-axis carrying the inner portions 37 of the septum valve 36 with them. This stretches the *outer portions* 39 which are away from the direction of movement and compresses the *outer portions* 39 which are

in the direction of movement. During this process, the inner portions 37 which are supported on the tooth members 62 of the levers 54 are entirely isolated from the off-axis, deflection forces.... [T]he resiliency of *the outer portions* 39 is less than that of the inner portions 37 because of the force isolation provided by the levers 54.

(*Id.* at col. 10, ll. 43 to 49) (emphasis added.) This process "provide[s] the desired deformation of the outer portions 38 without deforming the inner portions 37." (*Id.* at col. 10, ll. 61 to 63.) Plainly, this language means that when an instrument is inserted off-axis, it causes the levers to move with the ring. The levers and ring carry the inner portions with them, stretching the outer portions that are away from the direction of movement and compressing the outer portions which are in the direction of movement. The patent inventors obviously felt it was necessary to reference the outer portions as part of the narrative explaining how the RLT permits the valve portions to move to and from the axis of the cannula.

Professor McCarthy's testimony regarding "directional forces" also demonstrates that the outer portions are relevant to the "insubstantial difference" test. Professor McCarthy testified that the way that the RLT permits the valve portions to move to and from the axis of the cannula is by (1) isolating the valve portions from off-axis forces, and (2) having the instrument push on the levers rather than the valve portions. (Grimsley Decl., Ex. Z, "Blue Board" Demonstrative; Trial Tr. 2948:1–8;

---

claimed function is performed by the corresponding structure described in the specification or its result." *Id.* (internal quotations and citations omitted). Put differently, in order to show that the differences between the accused structure and the structure disclosed in the patent are "insubstantial," the patent owner must prove that the accused structure

works in *substantially the same way* and achieves substantially the same result as the structures disclosed in the patent. *Id.* at 1316–17. As explained above, the Court only analyzes whether the outer portions are relevant to the insubstantial difference test with respect to the floating function.

Trial Tr. 2949:12–23, Feb. 12, 2008.) Professor McCarthy described the manner in which the RLT handles off-axis forces as follows:

Q. What's going on in the right hand with regard to off-axis forces?

A. Well, we are seeing the instrument move from side to side. And when it moves from side to side, it hits the seal protector and the levers. It does not hit the orifice and cause it to deform. *The off-axis forces are directed into the seal protector and the levers to isolate those valve portions from those off-axis portions.*

. . . .

*. . . The levers—when you insert the instrument—spread the valve portions. And that—because of that expansion in size something has to happen with the rest of the septum seal and you see that it bumps up.*

. . . .

And the green portion, which is, you know, away from the valve portions have [sic] to bump up. And as soon as they do that, they create this resiliency because they can fold easily. When the instrument moves and pushes against the levers, it—you know, the ring moves inside, and it causes those folds to collapse in the direction of movement and to extend on the other side away from the movement.

(Trial Tr. 2948:1–8; 2950:15–19; 2950:25–2951:6, Feb. 12, 2008) (emphasis added). Put simply, this testimony shows that when an instrument is inserted into the orifice of the septum valve of the RLT and moved off-axis, it pushes on the levers rather than on the edge of the orifice itself, thereby deflecting the forces away from the valve portions and toward the outer portions. This deflection of forces ensures that the valve portions do not deform, so that the orifice will not develop a "cat-eye." (*Id.* at 2956:12–21; 2965:1–7.) Applied's own expert, Mr. Sheehan, agreed that valve portions of the RLT are entirely isolated from the off-axis forces:

Q. It's true, isn't it, that these levers and teeth entirely isolate the red valve portions from these off-axis forces?

A. That is correct. In fact, there is a paragraph—and you probably are going to take me to it—in the '553 patent that explains that.

(Trial Tr. 1059: 7–12, Jan. 22, 2008.) Professor McCarthy explained that this force isolation stands in sharp contrast to the way in which the gimbal handles forces generated by an instrument that is inserted and moved off-axis:

Q. In the gimbal, is the blue valve in any way entirely isolated from forces?

A. This is the key issue. It's absolutely not isolated. In fact, the forces must-instead of being directed around the valve portions, they are directed through that blue valve. The instrument pushes on that blue valve directly. There is no isolation at all. . . .

. . . .

There is no isolation of the blue valve from forces being generated by the instrument.

(Trial Tr. 2951:25–2952:10, Feb. 12, 2008.) This testimony provides evidence that one difference in the way in which the RLT and the gimbal perform the floating function is that the RLT completely isolates the valve portions from off-axis forces because the instrument pushes directly on the levers and seal protector, while the gimbal provides no such force isolation, allowing the instrument to push directly on the edge of the orifice.

Professor McCarthy's testimony proves that the outer portions are relevant to the RLT's ability to perform the floating function. Professor McCarthy discussed the outer portions in the context of explaining the direction in which the forces travel after they pass through the levers and the seal protector—the forces move toward the outer portions, thereby causing the outer portions to "bump up." (*Id.* at 2950:14–19.) Had this Court prohibited Professor McCarthy from uttering the words "outer portions" during his testimony, his "directional forces" theory would have been truncated, inaccurate, and confusing to the jury. As a result, the jury would have been deprived of relevant context for understanding the differences in the way in which the RLT and the gimbal perform the floating function. In order for U.S. Surgical to provide a full and accurate picture of the way in which the RLT performs the floating function, it was absolutely necessary for its expert to reference the outer portions.

Finally, the testimony of Applied's own expert reveals that the outer portions are relevant to the way in which the RLT performs the floating function. At his deposition, when Mr. Sheehan was asked why the deformation of the outer portions is desired in the RLT, he responded:

> Well, it's the desired deformation that allows the floating to occur.

(Morrow Decl., Ex. 8, at 139A) (emphasis added).[8] Apparently, Mr. Sheehan believed at one time that the outer portions were critical to the way in which the RLT performs the floating function. The Court is simply unable to reconcile Mr. Sheehan's deposition testimony with Mr. Sheehan's subsequent trial testimony that the outer portions are completely irrelevant.[9] In any event, Mr. Sheehan's sworn deposition testimony reveals that the outer portions are certainly relevant to the way in which the RLT permits the valve portions to float.

Applied asserts that this Court disregarded the Federal Circuit's mandate in *Applied Medical*, 448 F.3d at 1336, by ruling on remand that the jury could determine whether the outer portions are relevant to the claimed functions and by denying Applied's Motion *In Limine* No. 3 "to exclude reliance on any non-infringement theories contrary to the Federal Circuit's mandate." (Applied's Motion for Judgment as a Matter of Law, pp. 7–8.) Applied is mistaken. The Court's rulings are entirely consistent with the Federal Circuit's holding, which was that it was error for this Court to require the outer portions of the septum valve when analyzing the way in which the RLT performed the claimed functions, when "nothing in the district court's adopted claim construction requires [the outer portions]." *Applied Med.*, 448 F.3d at 1336. More specifically, the panel said:

> [N]othing in the district court's adopted claim construction *requires* the following functionality from the "permit to float" function: mechanical separation of the

---

8. Mr. Sheehan never explained at trial his reasons for contradicting his earlier deposition testimony highlighting the importance of the outer portions to the way in which the RLT performs the floating function. Not surprisingly, U.S. Surgical vigorously attacked Mr. Sheehan's credibility at trial by, among other things, presenting evidence that Mr. Sheehan's expert witness services are advertised on a website entitled "Hugesettlements.com." Notwithstanding U.S. Surgical's criticisms of Mr. Sheehan's trial testimony, the Court finds that Mr. Sheehan's deposition testimony was truthful and reliable. Mr. Sheehan gave his deposition well before trial and before U.S. Surgical filed its motion for summary judgment on the issue of infringement.

9. (*See* Trial Tr. 1034:8–1035:16, Jan. 22, 2008.)

valve portions into two distinct portions, inner valve portions that do not deform, outer portions that have excess material, or movement off-axis without substantial resistance.

*Id.* (emphasis added). In other words, the Federal Circuit held that when this Court analyzed the way that the RLT performs the floating function, it improperly imported unclaimed functions by *requiring* the existence of outer portions, as a matter of law. *Id.* The Federal Circuit concluded that, under claim constructions assumed by the Court, there was an issue of fact as to whether the gimbal and the RLT perform the claimed functions in substantially the same way. *Id.* at 1337.

Contrary to Applied's assertion, the Court's decision to permit U.S. Surgical to present evidence of the outer portions at trial is completely consistent with the Federal Circuit's ruling because neither the Court nor U.S. Surgical ever stated to the jury that the floating function *requires* outer portions. Rather, U.S. Surgical argued that the outer portions are *relevant to the way* in which the RLT permits the valve portions to float. The Federal Circuit has previously acknowledged that, under certain circumstances, it is necessary to use descriptive language not contained in the claim itself in order to properly analyze the way a claimed function is performed.[10] *See Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1361 (Fed.Cir.2000); *Ishida*, 221 F.3d at 1316–17. In *Kemco*, where the patent disclosed "a plastic envelope closing means," the court construed the claimed function of "closing" to mean "sealing, such that entry or exit is prevented." 208 F.3d at 1361. The court held that the accused structure performed the closing function in a substantially different way than the disclosed

structure because "unlike the disclosed flap, which closes by folding over the envelope, the dual-lip structure closes the accused envelope in a different way by meeting together and binding via the internal adhesive." *Id.* at 1365. Although the term "folding" was not a claimed function, the court properly used that term when describing the way in which the disclosed structure performed the claimed function of "closing." *Id.* Similarly, in *Ishida*, a case involving machines that packaged food, although the claimed function was defined simply as "stripping and sealing," the court used the term "rotate" when describing the way in which the patented embodiments performed the claimed function. 221 F.3d at 1314, 1317 ("In both embodiments of the '917 invention the mechanism rotates around fixed axes.") Because the accused machine did not rotate around a fixed axis but followed a straight-line path along the tub axis, the court found that the two devices performed the stripping and sealing function in a substantially different manner. *Id.* at 1317.

*Kemco* and *Ishida* illustrate that a court does not impermissibly import limitations into a claim merely by using descriptive language that is not included in the claim itself. Similarly, this Court did not import unclaimed functions into the RLT's means-plus-function limitation merely by permitting U.S. Surgical to reference the outer portions, which are not required by Claim 18. The Court simply allowed U.S. Surgical to use illustrative language to provide the jury with a more accurate and detailed explanation of the way in which the RLT performs the floating function.

Rather than importing unclaimed functions into the claim, the Court properly

---

**10.** This point was actually made by Judge Dyk in *Applied Med.*, 448 F.3d at 1339–40 (Dyk, J., dissenting).

instructed the jury on claim construction. The Court instructed the jury that "supporting the valve portions within the seal housing" means "holding up the valve portions within the seal housing," and that the term "permit the valve portions to float relative to the axis of the cannula" means "permit the valve portions to move to and from the axis of the cannula." (*See* Joint Jury Instructions, No. 15, p. 17.) These instructions, which were developed jointly by the parties and approved by the Court, do not refer to or require the deformation of the outer portions.

In arguing that the jury was misled in reaching its verdict by evidence of the outer portions, Applied also ignores the fact that its lead counsel, Joseph Re, vigorously argued throughout the trial that Claim 18 does not require outer portions and that the outer portions are irrelevant to the way that the RLT performs the floating function. Additionally, Applied's expert, Mr. Sheehan, strongly argued that Claim 18 does not require outer portions:

Q. Is that outer deformable portion of the valve part of Claim 18?

A. No. It's not mentioned in Claim 18. It's not part of Claim 18. It is extraneous to the matter claimed in Claim 18.

. . . .

As I said earlier, it has nothing to do with the claim. It has nothing to do with the claim language. It has nothing to do with the functions described in the critical element F. . . .

(Trial Tr. 1034:8–12; 1034:24–1035:2, Jan. 22, 2008.) Mr. Sheehan even went a step further, asserting that the outer portions are irrelevant to the claimed functions:

Q. Okay. And does the loose part of the valve outward toward the housing side, does that perform any supporting function in Figure 6 of the '553 patent?

A. No. They're just along for the ride.

(Trial Tr. 1035:13–16, Jan. 22, 2008.) This testimony shows that the jury was presented with two versions of the relevance of the outer portions of the septum valve to the way in which the RLT performs the floating function. Each side had an opportunity to argue their relevance, or lack thereof, and the jury simply found U.S. Surgical's version more persuasive than that offered by Applied.[11]

In essence, Applied is arguing that the outer portions of the septum valve are legally irrelevant to the infringement analysis and that the Court committed reversible error merely by allowing U.S. Surgical to mention the outer portions. Applied summarized its position at the December 20, 2006 hearing on summary judgment as follows:

The recited function is simply to support and float the orifice. I can't say it any more succinctly . . . And as we—you can remove the outer portions, completely remove them, and the orifice would still float and move relative to the axis of the cannula. And see, that's all you need.

---

**11.** Applied also complains that this Court and U.S. Surgical invited the jury to disregard Judge Ellis' construction regarding the relevant structure performing the floating function. (Applied's Reply Br., p. 7.) Applied's complaint is not well-founded. First, Judge Ellis' construction references a septum valve, and the outer portions are certainly part of that structure. Second, the Court instructed the jury four separate times that the relevant structure is, as Judge Ellis construed it, "a ring that is capable of moving side to side because it has a diameter less than that of the recess that holds it, and that is connected to levers with teeth that are in turn attached to the septum valve." (Trial Tr. 3238:25–3239:3; 3239:25–3240:3; 3242:7–10; 3242:22–25, Feb. 15, 2008.)

**1218**

(Grimsley Decl., Ex. K, p. 10.) In asking the Court to "completely remove" the outer portions from the infringement analysis, Applied was basically requesting that the Court instruct the parties to pretend that the outer portions do not exist. The Court refused to do so to avoid depriving the jury of relevant evidence on the issue of infringement. After carefully reviewing the parties' briefs and the complete trial record, the Court is even more convinced that its decision in this regard was correct. Some facts are indisputable. The indisputable fact in this case is that the outer portions of the septum valve in the RLT embodiment do exist and they are relevant to the way in which that embodiment performs the floating function. The patent says so. Professor McCarthy said so. Applied's own expert Mr. Sheehan said so. Most importantly, the jury, after carefully considering all the evidence presented at trial, said so. The Court committed no error in admitting evidence at trial regarding the outer portions of the septum valve in the RLT embodiment and allowing U.S. Surgical to argue to the jury that those portions of the valve were relevant to the way in which that embodiment performs the floating function.

## CONCLUSION

For the foregoing reasons, Applied's motion is DENIED.